UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>DERMA PEN, LLC,<br><br>             Debtor. | Chapter 11<br><br>Case No. 14-11894 (KJC)<br><br>Hearing Date: August 26, 2014, at 10:30 a.m. |

**DECLARATION OF JEREMY JONES**

Jeremy Jones declares under penalty of perjury:

    1.    I am the chief operating officer and a member of Derma Pen, LLC. I make this declaration in support of Derma Pen's "first day" motions. I have personal knowledge of the facts stated in this declaration and, if sworn as a witness, I am competent to testify to them and they are true and correct to the best of my knowledge, information and belief.

**A.    OVERVIEW OF THE COMPANY'S HISTORY AND BUSINESS**

    2.    Derma Pen, LLC ("Derma Pen") is a limited liability company organized and existing under the laws of the State of Delaware.

    3.    Derma Pen was founded by Michael Morgan ("Morgan") and Chad Milton ("Milton") in 2011. Morgan is the current CEO and Milton is the current President of Derma Pen.

    4.    Derma Pen is a provider of Class 1 FDA registered micro needling and skin treatment devices and systems.

    5.    Derma Pen's micro needling products include, but are not limited to, the DERMAPEN® Medical Model micro needling device.

    6.    Derma Pen also offers a line of DERMAPEN® approved consumables, which includes topical products, replacement needle tips, and cleaners, among others. The

DERMAPEN® micro needling skin treatment devices and related accessory products sold under the DERMAPEN® name shall hereinafter be referred to collectively as the "DERMAPEN Products."

7. As such, Derma Pen and its trademarks are associated with high-quality medical and cosmetic skin treatment products and services.

8. The DERMAPEN® trademark is the subject of U.S. Registration No. 4,096,295, for use in connection with skin treatment devices using multiple needles in a vibrating method for performing skin treatment procedures (the "'295 Registration"). The '295 Registration was filed on June 29, 2011 and issued on February 7, 2012 and is now outstanding and valid.

9. Derma Pen also has established, through continuous, long-term use in commerce common law rights in the mark "DERMAPEN" and in the use of the phrase "DERMAPEN" as a trade name or part of a trade name. Commencing at least as early as June 1, 2011, Derma Pen has used the "DERMAPEN" mark continually nationwide in interstate commerce to identify certain of its goods and services and to distinguish such goods and services from those made and sold by others.

10. Derma Pen's federally-registered and common law marks shall be hereinafter referred to collectively as the "DERMAPEN Marks."

11. Derma Pen has expended considerable time, resources, and effort in promoting the DERMAPEN Marks and developing substantial goodwill associated therewith.

12. Due to the continual use of the DERMAPEN Marks by Derma Pen, the DERMAPEN Marks have come to indicate a single source of Derma Pen's goods and services. The DERMAPEN Marks have further come to indicate Derma Pen as the single source of such quality goods and services.

13. Derma Pen and its use of the DERMAPEN Marks in the micro needling device and aesthetic medicine industries is well-known.

14. Further, Derma Pen is an FDA-registered establishment as an initial distributor/importer and/or as the repackager/relabeler of the DERMAPEN® micro needling devices. Derma Pen's FDA Registration Number is 3009081613 and its Owner/Operator Number is 10039633. Derma Pen has registered with the FDA its DERMAPEN® micro needling devices under the Proprietary Name "Dermapen."

15. The Listing Number for Derma Pen's FDA-registered DERMAPEN® micro needling device is D217307.

**B.   THE UTAH LAWSUIT**

16. On August 1, 2013, Derma Pen initiated an action in the United States District Court for the District of Utah, captioned *Derma Pen, LLC v. 4EverYoung Limited, DermapenWorld, BioSoft (Aust) Pty Ltd d/b/a DermapenWorld, Equipmed International Pty Ltd d/b/a DermapenWorld, and Stene Marshall d/b/a DermapenWorld*, Case No. 2:13-cv-00729 (the "Utah Lawsuit").

17. Specifically, the Utah Lawsuit involves claims related to: fraudulent inducement and rescission of the Standard Distribution Agreement ("SDA") executed by Derma Pen and 4EverYoung, or, in the alternative, breach of contract; federal and state trademark infringement of the DERMAPEN trademark following termination of the SDA; declaratory judgment concerning certain terms of the SDA; federal unfair competition, false designation of origin, and dilution in violation of the Lanham Act, 15 U.S.C. § 1051 *et seq.*, related to the DERMAPEN trademark; copyright infringement in violation of the Copyright Act, 17 U.S.C. § 101 *et seq.*; federal false designation of origin and false advertising related to defendants' use of a copyright

notice on websites bearing infringing works; violations of the Utah Registration and Protection of Trademarks and Service Marks Act, Utah Code Ann. § 70-3a-403 *et seq.*, related to the defendants' use of the DERMAPEN trademark; violations of the Utah Consumer Sales Practices Act, Utah Code Ann. § 13-11-1 *et seq.*, related to the defendants' use of the DERMAPEN trademark and a copyright notice on websites bearing infringing works; violations of the Utah Truth in Advertising Act, Utah Code Ann. § 13-11a-1 *et seq.*, related to the defendants' use of the DERMAPEN trademark and a copyright notice on websites bearing infringing works; and common law unfair competition and unjust enrichment, related to the defendants' use of the DERMAPEN trademark and a copyright notice on websites bearing infringing works.

**The Agreement At Issue In The Utah Lawsuit**

18.  On or around July 28, 2011, Derma Pen entered into the SDA with 4EverYoung, a private limited company organized under the laws of the United Kingdom, regarding the exclusive distribution of micro needling devices called the "ePen" in the United States. The SDA affords Derma Pen the right to distribute the ePen in the United States under Derma Pen's DERMAPEN Marks.

19.  Among other provisions, the SDA expressly acknowledges Derma Pen's ownership of and right to use the DERMAPEN Marks in the United States.

20.  Derma Pen provided notice of its intention not to renew the SDA on May 30, 2013, with an effective date of termination on August 1, 2013.

21.  The Utah Lawsuit is currently stayed by these proceedings. 4EY on August 11, 2014 filed an Emergency Motion with this Court for Relief from the Automatic Stay. The Court has set a hearing on the matter for September 9, 2014.

C.  **THE FLORIDA LAWSUIT**

22.  On February 7, 2014, Derma Pen initiated an action in the United States District Court for the Southern District of Florida, captioned *Derma Pen, LLC v. Equipmed USA, LLC, Brian Marshall, Joel Marshall and Adimarket, LLC* Case No. 0:14-cv-60314 (the "Florida Lawsuit").

23.  The Florida Lawsuit included causes of action against the Defendants for Trademark Infringement, Trade Name Infringement, Lanham Act Violations and related state causes of actions.  The Florida lawsuit after discovery in the Utah litigation that other parties were attempting to claim they were the real DERMAPEN®.

24.  The Florida Lawsuit is currently stayed by these proceedings.

25.  Despite the lawsuits the Defendants in those action are to this day still attempting to confuse customers by contacting them and claiming they are the real DERMAPEN®.

D.  **FDA AUDIT**

26.  On July 14, 2014, an auditor from the Food and Drug Administration (the "FDA") appeared at Derma Pen's offices for a routine, but unannounced audit of Derma Pen's facilities, inventory, equipment, and procedures. The audit lasted several weeks.

27.  Although the audit results were generally positive on their face, Derma Pen compliance consultant, Dr. Michael Johnson interpreted the results, combined with certain other recent actions to mean that as applied the FDA was preparing to act in some way with regard to the classification of microneedling devices industry-wide.

E.  **SECURED DEBT**

28.  In order to grow the business in 2011 Morgan and Milton contacted Michael Anderer ("Anderer"). Anderer has had great success in business over the past 20 years, usually

by guiding startup and early-stage companies to commercial viability and profitability. Anderer loaned Derma Pen money and received an equity stake in Derma Pen and was appointed as Chairman of Derma Pen. The First Loan was largely paid off, and in order to keep Derma Pen viable during the lawsuits, Anderer provided two new additional loans as set forth in the Cash Collateral Stipulation and has agreed to use of cash collateral and further financing.

29. These loans and stipulation for use of cash collateral are critical to keep Derma Pen viable in the Chapter 11.

F.   **EVENTS LEADING TO CHAPTER 11**

30. The dual lawsuits have caused a significant strain on Derma Pen's financials as it fought vigorously to protect the main assets of Derma Pen its name and trademark.

31. Derma Pen was unable to meet its legal bills and has had to borrow money to pay its fees through its secured creditor Anderer.

32. Further the FDA Audit raised the possibility that the FDA would take adverse action against Derma Pen as a going concern which could halt Derma Pen's operation, Derma Pen decided to elect to file a Bankruptcy petition so that it could market its assets for sale.

G.   **FIRST DAY RELIEF**

33. I participated in preparing and have reviewed each of the First Day Motions (including the exhibits and schedules attached thereto) and, to the best of my knowledge, believe that the facts set forth therein are true and correct. Such representation is based upon information and belief and thorough review of various materials and information, as well as my experience and knowledge of Derma Pen's operations and financial condition. If I were called upon to testify, I could and would, based on the foregoing, testify competently to the facts set forth in each of the First Day Motions.

34.     The relief sought in the First Day Motions will minimize the adverse effects of the instant chapter 11 case on Derma Pen and result in maximum creditor recoveries. I believe that the relief sought in each of the First Day Motions is necessary to enable Derma Pen to operate effectively in chapter 11 as debtors in possession.

35.     The relief requested in the First Day Motions was carefully tailored to the Debtor, in consultation with the professionals, to ensure that the Debtor's immediate operational needs are met and that Derma Pen suffers no immediate and irreparable harm. I personally participated in the analysis that led to the creation of each of the First Day Motions and assisted in the drafting and development of the relief requested therein. At all times, Derma Pen's management and professionals remained cognizant of the limitations imposed on debtors in possession, and, in light of those limitations, Derma Pen narrowed the relief requested at the outset of these cases to those issues that require urgent relief to sustain Derma Pen's immediate operability.

36.     Derma Pen believe that the commencement of these cases is in the best interests of the creditors, estates and other parties in interest, providing, among other things, the ability to maximize returns to the creditors and other stakeholders. As they did during the pre-petition period, Dema Pen, with the assistance of their professionals, will continue to maintain their going concern value while actively reorganizing their going concern value in order to maximize value for the benefit of the creditors.

37.     In conclusion, for the reasons stated herein and in each of the First Day Motions filed concurrently or in connection with the commencement of these cases, I respectfully request that each of the First Day Motions be granted in its entirety, together with such other and further relief as this Court deems just and proper.

I DECLARE UNDER PENALTY OF PERJURY that the foregoing is true and correct.

Executed this 21st day of August, 2014

_____
Jeremy Jones, Chief Operation Officer

8