## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

In re:

DERMA PEN, LLC,[1]

                Debtor.

Chapter 11

Case No. 14-11894 (KJC)

Objection Deadline:  November 14, 2014 at 4:00 p.m. (ET)
Hearing Date: November 19, 2014 at 1:00 p.m. (ET)

### DEBTOR'S MOTION FOR ENTRY OF AN ORDER (A) APPROVING THE SALE OF THE DEBTOR'S ASSETS FREE AND CLEAR OF LIENS CLAIMS AND ENCUMBRANCES, (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTACTS AND UNEXPIRED LEASES, AND (C) GRANTING CERTAIN RELATED RELIEF

The above-captioned debtor and debtor in possession (the "Debtor" and/or "Derma Pen"), by and through its undersigned counsel, hereby moves this Honorable Court (the "Motion"), pursuant to sections 105, 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Del. Bankr. L.R. 6004-1, for entry of an order (a) approving the sale of the Debtor' s assets to the successful bidder(s) determined at an auction, (b) authorizing the assumption and assignment of certain executory contracts and unexpired leases, and (c) granting certain related relief (the "Sale Order").  In support of this Motion, the Debtor respectfully represents as follows:

---

[1] The debtor in this chapter 11 bankruptcy case and the last four digits of the Debtor's federal tax identification number is 0866.  The location of the Debtor's headquarters and the service address is 3216 So. Highland Drive #200, Salt Lake City, UT 84106.

## **HIGHLIGHTED PROVISIONS REQUIRED BY DEL. BANKR. L.R. 6004-1**

Del. Bankr. L.R. 6004-1 requires that motions requesting the approval of the sale of

assets outside the ordinary course of business highlight certain material terms contained in the

asset purchase agreement and proposed Sale Order.  Such material terms are highlighted below:

- The Asset Purchase Agreement (the "<u>APA</u>") (a copy of which will be filed prior to the Sale Procedures Hearing) will provide either party to terminate the APA if the Closing shall not have occurred on or before ten (10) days after the Approval Order becomes a Final Order; *provided*, *however*, that the right to terminate the APA shall not be available to a Party if such Party has failed to perform in all material respects its obligations under this Agreement and such failure has been the cause of, or results in, the failure of the Closing to occur on or prior to ten (10) days after the Approval Order becomes a Final Order.

- The Secured Lender, Michael Anderer, and insider shall be entitled to submit a credit bid by the Bid Deadline in an amount up to $530,000.00.  The Secured Lender has submitted a Term Sheet of a bid of $1,080,000.00 consisting of a credit bid of $530,000.00 and a cash bid of $550,000.00.   Upon the execution of the APA, Anderer shall submit a deposit of $150,000.00.

- Bidders must provide a cash deposit of $150,000.00.  Sales Procedures Order, Ex. 3, ¶ 3 (xii).[2]  The deposit will be forfeited if the bidder is the Prevailing Bidder and fails to close because of its breach of the APA.  Sales Procedures Order, Ex. 3, ¶ 10.

- The Sale Order provides that the Prevailing Bidder will not be subject to claims based on successor liability.  Sale Order, ¶¶ 21 and 22.

- Following the closing of the sale transaction, the Debtor will have reasonable access to its books and records for purposes of administering its estate.

- The Sale Order provide that the ten-day stay imposed by Sections 6004(h) and 6006 (d) shall not apply not apply to the Sale Order.  Sale Order, ¶ 25.

---

[2] The term "Procedures Order" shall mean the proposed form of order attached to the *Debtor's Motion for Entry of (I) An Order (A) Approving Sale Procedures in Connection With Sale of Substantially All of the Debtors' Assets, (B) Scheduling an Auction and Hearing to Approve the Transaction and Approving the Form and Manner of Notice Thereof, and (C) Establishing Procedures Relating to the Assumption and Assignment of Executory Contract* (the "<u>Sale Procedures Motion</u>") [Docket No. 169].

## JURISDICTION

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M), (N) and (O).  Venue of this case and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief requested herein are sections 105(a), 363(b), 363(f), and 365 of the Bankruptcy Code and Bankruptcy Rules 2002(a)(2), 6003, 6004, 6006(a), 9007 and 9014.

## BACKGROUND

3.      On August 8, 2014 (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code commencing the above captioned case.

4.       The Debtor is operating as debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.  No trustee, examiner or committee have been appointed in this chapter 11 case.

5.      The factual background relating to the Debtor's commencement of this case is set forth in detail in the Declaration of Jeremy Jones in Support of Chapter 11 Petition and First Day Pleadings (the "Jones Declaration") [Docket No. 22], which is fully incorporated herein by reference.[3]

6.      Derma Pen is a limited liability company organized under Delaware law in 2011 and registered to do business in Utah.  Derma Pen is the exclusive distributor of aesthetic equipment, including microneedling devices and related treatment products sold in the United States.

---

[3] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Jones Declaration.

**The Need for a Prompt Sale**

7.      The Debtor filed the Petition with the expressed intention of selling the Assets,

namely the trademark and URL address, for the highest price to pay creditors' claims pursuant

to § 363 of the Bankruptcy Code free and clear of all liens and interests to maximize the value

for the creditors and other parties in interest and the bankruptcy estate.

**Stalking Horse Bid from Michael Anderer**

8.      The Debtor has executed a term sheet with Michael Anderer, attached hereto as

**Exhibit A**, for a bid of 1,080,000.00 which will consist of a credit bid of $530,000.00 and a

cash bid of $550,000.00.


**RELIEF REQUESTED**

9.      The Debtor, in its  business judgment and the exercise of itsfiduciary duties,

believes that it is in the best interests of the Debtor's estates and its creditors to market and sell

substantially all of its assets in accordance with the procedures described and requested in the

Sale Procedures Motion.[4]  Accordingly, the Debtor seeks entry of an order (a) authorizing the

sale of substantially all of the Debtor's assets to the successful bidder(s) at the auction to be

conducted in accordance with the any order approving the Sales Procedures Motion (the

"Auction") pursuant to an asset purchase agreement substantially in the form of the APA, (b)

authorizing the assumption and assignment of the Assigned Contracts, and (c) granting certain

related relief (such order is referred to as the "Sale Order").

---

[4] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the
Sale Procedures Motion.

**BASIS FOR RELIEF REQUESTED**

    A.    **The Sale is Within the Sound Business
Judgment of the Debtors and Should be Approved**

    10.    Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a debtor-in-possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Section 363 of the Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's assets prior to confirmation of a plan.  However, courts in this Circuit and others have required that the decision to sell assets outside the ordinary course of business be based upon the sound business judgment of the debtors.  See e.g. Myers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996); In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (D. Del. 1999); In re Delaware & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991).

    11.    The "sound business judgment" test requires a debtor to establish four elements in order to justify the sale or lease of property outside the ordinary course of business, namely, (a) that a "sound business purpose" justifies the sale of assets outside the ordinary course of business, (b) that adequate and reasonable notice has been provided to interested persons, (c) that the debtor has obtained a fair and reasonable price, and (d) good faith.  Id.; Titusville Country Club v. Pennbank (In re Titusville Country Club), 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991).

    12.    A sound business purpose for the sale of a debtor's assets outside the ordinary course of business may be found where such a sale is necessary to preserve the value of assets for the estate, its creditors or interest holders.  See, e.g., In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143 (3rd Cir. 1986); In re Lionel Corp., 722 F.2d 1063 (2nd Cir. 1983).  In fact, the paramount goal in any proposed sale of property of the estate is to maximize the proceeds

received by the estate.  See In re Food Barn Stores, Inc., 107 F.3d 558, 564-65 (8th Cir. 1997) (in

bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at

hand"); In re Integrated Res., 147 B.R. at 659 ("It is a well-established principle of bankruptcy

law that the … [Debtor's] duty with respect to such sales is to obtain the highest price or greatest

overall benefit possible for the estate.") (quoting In re Atlanta Packaging Prods., Inc., 99 B.R.

124, 130 (Bankr. N.D. Ga. 1988)).

    13.    Furthermore, once "the debtor articulates a reasonable basis for its business

decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not

entertain objections to the debtor's conduct."  Committee of Asbestos-Related Litigants and/or

Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.), 60 B.R. 612, 616 (Bankr.

S.D.N.Y. 1986).  There is a presumption that "in making a business decision the directors of a

corporation acted on an informed basis, in good faith and in the honest belief that the action

taken was in the best interests of the company."  In re Integrated Res., 147 B.R. at 656 (quoting

Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)).  Thus, if a debtor's actions satisfy the

business judgment rule, the transaction in question should be approved under section 363(b)(1).

Indeed, when applying the "business judgment" standard, courts show great deference to a

debtor's business decisions.  See Pitt v. First Wellington Canyon Assoc. (In re First Wellington

Canyon Assocs.), 1989 WL 106838, at *3 (N.D. Ill. 1989) ("Under this test, the debtor's business

judgment … must be accorded deference unless shown that the bankrupt's decision was taken in

bad faith or in gross abuse of the bankrupt's retained discretion.").

    14.    The Debtor submits that the proposed asset sale satisfies that "sound business

reason test."  The prompt sale of the Acquired Assets presents the best opportunity to maximize

the value for the estates in light of the need to sell the Acquired Assets in order to maximize the value of such assets.

15.     Moreover, the notice procedures provided for in the proposed Sale Procedures Order are designed to provide adequate notice to all potentially interested parties, including those who have previously expressed an interest in purchasing the Debtor's assets.  The Debtor submits that such notice is adequate for entry of the Sale Order and satisfies the requisite notice provisions required under Section 363(b) of the Bankruptcy Code.  Accordingly, the proposed Sale satisfies the second prong of the sound business judgment test.

16.     Furthermore, the Sale Procedures provided for in the Sale Procedures Order are designed to maximize the value received for the Acquired Assets.  The process proposed by the Debtor allows for a timely auction process, thus providing potential bidders adequate time and information to submit a Qualifying Bid.  The Sale Procedures are designed to ensure that the Acquired Assets will be sold for the highest or otherwise best possible purchase price and probability of payment, among other considerations.  The Debtor has already subjected, and the proposed Sale Procedures will be further subject, the Acquired Assets to a market check through the solicitation of Qualifying Bids both prior to and through a court-supervised Auction process.  Accordingly, the Debtor and all parties-in-interest can be assured that the consideration received for the Acquired Assets is fair and reasonable, thus satisfying the third prong of the sound business judgment test is met.

17.     Finally, as discussed below in Section B., the "good faith" prong of the sound business judgment test is also satisfied here.

**B.    The Sale is Proposed in "Good Faith"**
**Under Section 363(m) of the Bankruptcy Code**

18.    Section 363(m) of the Bankruptcy Code provides, in pertinent part:

The reversal or modification on appeal of an authorization under subsection (b)…of this section of a sale…of property does not affect the validity of a sale…under such authorization to an entity that purchased…such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale… were stayed pending appeal.

11 U.S.C. § 363(m).

19.    Section 363(m) of the Bankruptcy Code thus protects the purchaser of assets sold pursuant to Section 363 of the Bankruptcy Code from the risk that it will lose its interest in the purchased assets if the order allowing the sale is reversed on appeal.

20.    As required by Section 363(m) of the Bankruptcy Code, the Sale Procedures have been proposed in good faith and provide for both the Debtor and potential purchaser(s) to act in good faith in negotiating the sale of the Acquired Assets.  Although the Bankruptcy Code does not define "good faith purchaser," the Third Circuit, construing Section 363(m) of the Bankruptcy Code, has stated that "the phrase encompasses one who purchases in 'good faith' or for 'value'."  In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143, 147 (3d Cir. 1986).  To constitute lack of good faith, a party's conduct in connection with the sale must usually amount to "fraud, collusion between the purchaser and other bidders or the trustee or an attempt to take grossly unfair advantage of other bidders."  Id.; see also In re Bedford Springs Hotel, Inc., 99 B.R. 302, 305 (Bankr. W.D. Pa. 1989); In re Perona Bros., Inc., 186 B.R. 833, 839 (D.N.J. 1995).  Due to the absence of a bright line test for good faith, the determination is based on the facts of each case, concentrating on the "integrity of [an actor's] conduct during the sale proceedings."  In re Pisces Leasing Corp., 66 B.R. 671, 673 (E.D.N.Y. 1986) (quoting In re Rock Indus. Mach. Corp., 572 F.2d 1195, 1998 (7th Cir. 1978)).

21.      The Debtor acknowledges that Anderer may be an "insider" as defined in Section

101 of the Bankruptcy Code, but the Debtor submits that the Bid Procedures and terms of the

Anderer Agreement satisfy even the heightened good faith requirement set out in the *Abbott's*

*Dairies of Pennsylvania* case where an insider is involved. (agreeing that where "the asset sale is

to a purported insider, the purchaser has a heightened responsibility to show that the sale is

proposed in good faith and for value").

22.      As in *Abbotts Dairies of Pennsylvania, Inc.*, the  identity and role of Anderer, the

stalking horse bidder, the Pre-Petition Lender Party and DIP Lender, have been fully disclosed in

this case (finding the Debtor acted in good faith where the Debtor "disclosed all elements of the

transaction, including but the insider status of the proposed purchaser").

23.      In addition, the Debtor has engaged in good-faith arm's length negotiations with

Anderer, and submits that Anderer also has negotiated in good faith and at arm's length to

acquire the Assets, with the Debtor and Anderer being represented by their respective counsel.

The Debtor submits that Anderer has proceeded in good faith and is offering consideration that

constitutes fair value for the Assets.  With respect to the "value" requirement, the current value of

the Assets is difficult to quantify, but the Debtor believes that the lawful right to credit bid and

the proposed procedure for further exposing the Assets to an open marketing and bidding process

will demonstrate the market value of the Assets.

24.      As noted above, the Anderer Agreement is subject to higher and better offers, and

Anderer has not requested or received any compensation or additional bid protections from the

Debtor for his role as stalking horse bidder.  Therefore, the Debtor does not believe that Anderer

has engaged in any conduct that would preclude this Court from making a "good faith" finding at

the hearing to approve this proposed Sale.  The Court, therefore, should conclude that the Bid

Procedures and the Anderer Agreement meet each of the four *Abbotts Dairies of Pennsylvania, Inc.* requirements.

25.    Here, the sale of the Acquired Assets has been proposed in good faith and the Sale Procedures ensure that the sale of the Acquired Assets to the Prevailing Bidder(s) will be in good faith.  Under the circumstances, the Prevailing Bidder(s) should be afforded the protections that Section 363(m) of the Bankruptcy Code provides to a good faith purchaser.

26.    Furthermore, the Sale Procedures are designed to prevent the Debtor or the Prevailing Bidder(s) from engaging in any conduct that would cause or permit the sale of the Acquired Assets to the Prevailing Bidder(s), to be avoided under Section 363(n) of the Bankruptcy Code.

27.    Based on the foregoing, the Debtor requests that the Court make a finding following the Sale Hearing that (i) the sale of the Acquired Assets is a proper exercise of the Debtor's business judgment, (ii) the sale of the Acquired Assets is in good faith providing the Prevailing Bidder(s) with the protections of Section 363(m) of the Bankruptcy Code and (iii) that no party has engaged in conduct that would cause or permit the sale of the Acquired Assets to the Prevailing Bidder(s) to be avoided under Section 363(n) of the Bankruptcy Code.

C.    **The Sale Satisfies the Requirements
of Section 363(f) of the Bankruptcy Code**

28.    The Debtor respectfully submits that it is appropriate to sell the Acquired Assets free and clear of all interests, pursuant to Section 363(f) of the Bankruptcy Code, with all such interests attaching to the net sale proceeds of the Acquired Assets to the extent applicable. Section 363(f) of the Bankruptcy Code authorizes a debtor to sell assets free and clear of liens, claims, interests and encumbrances if:

a. applicable nonbankruptcy law permits sale of such property free and clear of such interests;

b. such entity consents;

c. such interest is a lien and the price at which such property is to be sold is greater than the value of all liens on such property;

d. such interest is in bona fide dispute; or

e. such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).  This provision is supplemented by Section 105(a) of the Bankruptcy Code, which provides that "[t]he Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).

29.     Because section 363(f) of the Bankruptcy Code is drafted in the disjunctive, satisfaction of any one of its five requirements will suffice to permit the sale of the Acquired Assets free and clear of the interests.  *In re Dundee Equity Corp.*, 1992 Bankr. LEXIS 436, *12 (Bankr. S.D.N.Y. 1992) ("Section 363(f) is in the disjunctive, such that the sale free of interest concerned may occur if any one of the conditions of § 363(f) have been met."); *In re Wolverine Radio Co.*, 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (stating that Bankruptcy Code section 363(f) is written in the disjunctive; holding that the court may approve the sale 'free and clear' provided at least one of the subsections of section 363(f) is met).

30.     The Debtor submits that it will establish at the Sale Hearing that one or more of the tests under section 363(f) will be satisfied with respect to the transfer of the Acquired Assets pursuant to a Sale Order.

**D.     The Acquired Assets Should Be Sold
Free and Clear of Successor Liability**

31.     Under the terms of the proposed APA, the Debtor has included a provision whereby the Purchaser(s) will assume and agree to pay, perform and discharge as and when they

become due and payable, or will be required to perform, all liabilities which will be performed

on and after consummation of the APA.  The Purchaser(s), therefore, should not be liable for any

of the Debtor's liabilities in connection with the sale of the Acquired Assets as a successor to the

Debtor's business or otherwise, unless expressly assumed.  Extensive case law exists providing

that claims against the winning bidder are directed to the proceeds of a free and clear sale of

property and may not be asserted against a buyer subsequently.

32.     Courts have held that a buyer of a debtor's assets pursuant to a section 363 sale

takes free from successor liability resulting from pre-existing claims.  See Ninth Ave. Remedial

Group v. Allis-Chalmers Corp., 195 B.R. 716, 732 (N.D. Ind. 1996) (stating that a bankruptcy

court has the power to sell assets free and clear of any interest that could be brought against the

bankruptcy estate during the bankruptcy); MacArthur Co. v. Johns-Manville Corp. (In re Johns-

Manville Corp.), 837 F.2d 89, 93-94 (2d Cir. 1988) (channeling of claims to proceeds consistent

with intent of sale free and clear under section 363(f) of the Bankruptcy Code); American Living

Sys. v. Bonapfel (In re All Am. of Ashburn, Inc.), 56 B.R. 186, 190 (Bankr. N.D. Ga. 1986)

(product liability claims precluded on successor doctrine in a sale of assets free and clear).

33.     The purpose of an order purporting to authorize the transfer of assets free and

clear of all "interests" would be frustrated if claimants could thereafter use the transfer as a basis

to assert claims against the Purchaser(s) arising from the Debtor's pre-sale conduct.  Under

section 363(f) of the Bankruptcy Code, the Purchaser(s) are entitled to know that the Acquired

Assets are not infected with latent claims that will be asserted against the Purchaser(s) after the

proposed transaction is completed.

34.     Accordingly, consistent with the above-cited case law, the Debtor requests that the

Sale Order provide that the Purchaser(s) are not liable as a successor under any theory of

successor liability, for claims that encumber or relate to the Acquired Assets, including, without limitation, any claims arising under a theory of successor liability.

**E.** **Assumption and Assignment of the Assigned Contracts Is Authorized by Section 365 of the Bankruptcy Code**

(i)    *Assumption and Assignment Based on Debtor's Business Judgment*

35.    Section 365(a) and (b) of the Bankruptcy Code authorizes debtors-in-possession to assume executory contracts or unexpired leases subject to the court's approval, and requires such debtors-in-possession to satisfy certain requirements at the time of assumption.  Under section 365(a) of the Bankruptcy Code, a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a).  Section 365(b)(1) of the Bankruptcy Code, in turn, codifies the requirements for assuming an unexpired lease or executory contract of a debtor, providing in relevant part that:

> (b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee--
>
> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default …;
>
> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, or any actual pecuniary loss to such party resulting from such default; and
>
> (C) provides adequate assurance of future performances under such contract or lease.

11 U.S.C. § 365(b)(1).

36.    The standard that is applied by the Third Circuit in determining whether an executory contract or unexpired lease should be assumed is the debtor's "business judgment" that the assumption is in its economic best interests.  See Sharon Steel Corp. v. National Fuel Gas

Distrib. Corp., 872 F.2d 36, 40 (3rd Cir. 1989).  See also NLRB v. Bildisco & Bildisco, 465 U.S.

513, 523 (1984) (describing business judgment test as "traditional") (superseded in part by 11

U.S.C. § 1113); In re III Enterprises, Inc. V, 163 B.R. 453, 469 (Bankr. E.D. Pa. 1994) (citations

omitted), aff'd, 169 B.R. 551 (E.D. Pa. 1994).

  37. It is well established that the court should approve a debtor's motion to assume or

reject an executory contract if the debtor's decision is based on its "business judgment."  See In

re Decora Industries, Inc., 2002 WL 32332749, at *8 (D. Del. 2002); Official Comm. for

Unsecured Creditors v. Aust (In re Network Access Solutions, Corp.), 330 B.R. 67, 75 (Bankr. D.

Del. 2005) ("The standard for approving the assumption of an executory contract is the business

judgment rule"); In re Exide Techs., 340 B.R. 222, 239 (Bankr. D. Del. 2006) ("The propriety of

a decision to reject an executory contract is governed by the business judgment standard").  See

also Phar Mor, Inc. v. Strouss Bldg. Assocs., 204 B.R. 948, 952 (N.D. Ohio 1997) ("Courts

should generally defer to a debtor's decision whether to reject an executory contract.") (citation

omitted).

  38. To determine if the business judgment test is met, the court "is required to

examine whether a reasonable business person would make a similar decision under similar

circumstances."  In re Exide Techs., 340 B.R. at 239 ("This is not a difficult standard to satisfy

and requires only a showing that rejection will benefit the estate.")  Specifically, a court should

find that the assumption or rejection is elected on "an informed basis, in good faith, and with the

honest belief that the assumption … [is] in the best interest of [the debtor] and the estate."  In re

Network Access Solutions Corp., 330 B.R. at 75.  Under this standard, a court should approve a

debtor's business decision unless that decision is the product of bad faith or a gross abuse of

discretion.  See Computer Sales Int'l, Inc. v. Federal Mogul (In re Federal Mogul Global, Inc.),

14

293 B.R. 124, 126 (D. Del. 2003); Lubrizol Enters. v. Richmond Metal Finishers, 756 F.2d 1043, 1047 (4th Cir. 1985).

39.    In the present case, the Debtor's assumption and assignment of the Assigned Contracts to the Purchaser(s) meets the business judgment standard and satisfies the requirements of section 365 of the Bankruptcy Code.  As discussed above, the transactions contemplated by the APA will provide significant benefits to the Debtor's estate.  The Assigned Contracts are necessary for the purchaser(s) to conduct the business, and, the assumption and assignment of the Assigned Contracts is essential to inducing the highest or best offer for the Acquired Assets.  Further, pursuant to the terms of the proposed APA, the Debtor expects that any applicable cure payments will be borne solely by the Purchaser(s).  Because the Debtor cannot otherwise obtain the benefits of the APA, and cure payments are expected to be borne by the Purchaser(s), the assumption of the Assigned Contracts is undoubtedly a sound exercise of the Debtor's business judgment.  Finally, upon consummation of the Sale, the Debtor will no longer continue to operate the business and will therefore have no use for any contracts and leases utilized in that business.  Accordingly, to the extent that the Debtor can sell any related executory contracts and unexpired leases to a third party in connection with the sale of the Acquired Assets, they will be able to generate cash to satisfy claims against the estate.

(ii)    *Adequate Assurance of Future Performance*

40.    A debtor in possession may assign an executory contract or an unexpired lease of the debtor if it assumes the agreement in accordance with section 365(a), and provides adequate assurance of future performance by the assignee, whether or not there has been a default under the agreement.  See 11 U.S.C. § 365(f)(2).  Significantly, among other things, adequate assurance may be provided by demonstrating the assignee's financial health and experience in managing

the type of enterprise or property assigned. See, e.g., In re Bygaph, Inc., 596, 605-606 (Bankr.

S.D.N.Y. 1986) (stating that adequate assurance of future performance is present when the

prospective assignee of lease from the debtor has financial resources and has expressed

willingness to devote sufficient funding to the business in order to give it a strong likelihood of

succeeding).

41.    The meaning of "adequate assurance of future performance" depends on the facts

and circumstances of each case, but should be given "practical, pragmatic construction." EBG

Midtown South Corp. v. McLaren/Hart Envtl. Engineering Corp. (In re Sanshoe Worldwide

Corp.), 139 B.R. 585, 592 (S.D. N.Y. 1992) (citations omitted), aff'd, 993 F.2d 300 (2d Cir.

1993); Carlisle Homes, Inc. v. Azzari (In re Carlisle Homes, Inc.), 103 B.R. 524, 538 (Bankr.

D.N.J. 1988).

42.    Pursuant to the Sale Procedures, the Debtor will require potential bidders to

provide evidence constituting adequate assurance of future performance, to be provided to

counterparties to Assigned Contracts upon their request. Specifically, sections 3(vi) of the Sale

Procedures requires each Qualified Bidder to provide documentation that:

> contains such audited financial and/or other information that will allow the
> Debtor, , to make a reasonable determination as to the Qualifying Bidder's
> financial and other capabilities to consummate the transactions contemplated by
> the Modified APA, including, without limitation, such financial and other
> information setting forth adequate assurance of future performance under section
> 365 of the Bankruptcy Code in a form requested by the Debtor to allow the
> Debtor to serve within one (1) business day after such receipt such information on
> counter-parties to any contracts or leases being assigned in connection with the
> proposed sale.

43.    Based on the information provided pursuant to the foregoing and any other

information that may be required, the Debtor submits that the Prevailing Bidder(s) will be able to

demonstrate adequate assurance that they can perform their obligations under the Assigned

Contracts as required by Section 365 of the Bankruptcy Code.

(iii)    *Assignment Permitted Notwithstanding Anti-Assignment Provisions*

44.    To assist in the assumption, assignment and sale of the Assigned Contracts, the Debtor also requests that the Court enter an order providing that anti-assignment provisions in the Assigned Contracts shall not restrict, limit or prohibit the assumption, assignment and sale of the Assigned Contracts and are deemed and found to be unenforceable anti-assignment provisions within the meaning of section 365(f) of the Bankruptcy Code.

45.    Section 365(f)(1) of the Bankruptcy Code permits a debtor to assign unexpired leases and contracts free from such anti-assignment restrictions:

> [N]otwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease under paragraph (2) of this subsection.

11 U.S.C. § 365(f)(1).

46.    Section 365(f)(1), by operation of law, invalidates provisions that prohibit, restrict, or condition assignment of an executory contract or unexpired lease.  See e.g., Coleman Oil Co., Inc. v. Circle K Corp (In re Circle K Corp.), 127 F.3d 904, 910-11 (9th Cir. 1997) ("no principle of bankruptcy or contract law precludes us from permitting the Debtors here to extend their leases in a manner contrary to the leases' terms, when to do so will effectuate the purposes of section 365"), cert denied, 522 U.S. 1148 (1998).  Section 365(f)(3) goes beyond the scope of section 365(f)(1) by prohibiting enforcement of any clause creating a right to modify or terminate the contract or lease upon a proposed assumption or assignment thereof.  See, e.g., In re Jamesway Corp., 201 B.R. 73 (Bankr. S.D.N.Y 1996) (section 365(f)(3) prohibits enforcement of any lease clause creating right to terminate lease because it is being assumed or assigned, thereby indirectly barring assignment by debtor; all lease provisions, not merely those entitled anti-assignment clauses, are subject to court's scrutiny regarding anti-assignment effect).

47.     Other courts have recognized that provisions that have the effect of restricting assignments cannot be enforced.  See In re Rickel Home Centers, Inc., 240 B.R. 826, 831 (D. Del. 1998) ("In interpreting Section 356(f) [sic], courts and commentators alike have construed the terms to not only render unenforceable lease provisions which prohibit assignment outright, but also lease provisions that are so restrictive that they constitute de facto anti-assignment provisions.")  Similarly, in In re Mr. Grocer, Inc., the court noted that:

> [the] case law interpreting § 365(f)(1) of the Bankruptcy Code establishes that the court does retain some discretion in determining that lease provisions, which are not themselves ipso facto anti-assignment clauses, may still be refused enforcement in a bankruptcy context in which there is no substantial economic detriment to the landlord shown, and in which enforcement would preclude the bankruptcy estate from realizing the intrinsic value of its assets.

In re Mr. Grocer, Inc., 77 B.R. 349, 354 (Bankr. D.N.H. 1987).  Thus the Debtor requests that any anti-assignment provisions be deemed not to restrict, limit or prohibit the assumption, assignment and sale of the Assigned Contracts and be deemed and found to be unenforceable anti-assignment provisions within the meaning of section 365(f) of the Bankruptcy Code.

### F.     Relief Under Bankruptcy Rules 6004(h) and 6006(d) is Appropriate

48.     Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property … is stayed until the expiration of 10 days after entry of the order, unless the court orders otherwise."  Additionally, Bankruptcy Rule 6006(d) provides that an "order authorizing the trustee to assign an executory contract or unexpired lease … is stayed until the expiration of 10 days after the entry of the order, unless the court orders otherwise."  The Debtor requests that any order approving the APA and the assumption and assignment of the Assigned Contracts be effective immediately by providing that the 10-day stays under Bankruptcy Rules 6004(h) and 6006(d) are waived.

49.     The purpose of Bankruptcy Rules 6004(h) and 6006(d) is to provide sufficient time for an objecting party to appeal before an order can be implemented.  See Advisory Committee Notes to Fed. R. Bankr. P. 6004(h) and 6006(d).  Although Bankruptcy Rules 6004(h) and 6006(d) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the 10-day stay period, the leading treatise on bankruptcy suggests that the 10-day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure."  10 Collier on Bankruptcy ¶ 6004.10 (15th rev. ed. 2006).  Furthermore, Collier suggests that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal.  Id.

50.     To maximize the value received for the Acquired Assets, the Debtor seeks to close the sale as soon as possible after the Sale Hearing.  Accordingly, the Debtor hereby requests that the Court waive the ten-day stay period under Bankruptcy Rules 6004(h) and 6006(d) or, in the alternative, if an objection to the sale is filed, reduce the stay period to the minimum amount of time needed by the objecting party to file its appeal.

## NOTICE

51.     Notice of this Motion has been served on (i) the Office of the United States Trustee; (ii) the Debtor's prepetition secured lenders; (iii) counsel for Michael Anderer; (iv) counsel for 4EverYoung, Ltd, and Stene Marshall, (v) the Debtor's 20 largest creditors; (vi) all taxing authorities having jurisdiction over any of the Acquired Assets, including the Internal Revenue Service; (vii) the United States Department of Justice; (viii) all parties that have requested special notice pursuant to Bankruptcy Rule 2002; (ix) all Persons known or reasonably believed to have asserted a lien on any of the Acquired Assets; (x) the counterparties to each of

the Debtor contracts and leases that may be an Assigned Contract; (xi) all Persons known or

reasonably believed to have expressed an interest in acquiring the Acquired Assets; and (xii) the

Attorneys General in the States where the Acquired Assets are located.

## **CONCLUSION**

WHEREFORE, for the reasons set forth herein, the Debtor respectfully requests that this

Court enter (a) an order, substantially in the form attached hereto as **Exhibit B**, (i) approving the

APA between the Debtor and the Prevailing Bidder(s); (ii) authorizing the Sale of the Acquired

Assets free and clear of all liens, claims and encumbrances, including successor liability claims;

(iii) authorizing and approving the assumption and assignment of the Assigned Contracts; and

(iv) granting such other and further relief as is just and proper.

Dated:  October 20, 2014
　　　　　Wilmington, Delaware

THE HOGAN FIRM

*/s/ Garvan F. McDaniel*　　　　　　　　　
Garvan F. McDaniel (DE Bar No. 4167)
Daniel K. Hogan (DE Bar No. 2814)
1311 Delaware Avenue
Wilmington, Delaware  19806
Telephone:  (302) 656-7540
Facsimile:  (302) 656-7599
Email: gfmcdaniel@dkhogan.com
　　　　　dkhogan@dkhogan.com

-and-

WOODBURY & KESLER, P.C.
Russell S. Walker
525 East 100 South, Suite 300
Salt Lake City, UT 84102
Telephone:  (801) 364-1100
Facsimile: (801) 359-2320
Email: rwalker@wklawpc.com

*Counsel for the Debtor*
*and Debtor-in-Possession*
