IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| DERMA PEN, LLC, [1] | Case No. 14-11894 (KJC) |
|  | **Related Docket Nos. 169, 179, 182** |
| Debtor. |  |

**OBJECTION OF 4EVERYOUNG LIMITED AND STENE MARSHALL TO
THE DEBTOR'S MOTION FOR ORDER (A) APPROVING SALE
PROCEDURES IN CONNECTION WITH SALE OF SUBSTANTIALLY ALL
OF THE DEBTOR'S ASSETS, (B) SCHEDULING AN AUCTION AND
HEARING TO APPROVE THE TRANSACTION AND APPROVING THE
FORM AND MANNER OF NOTICE THEREOF, AND (C) ESTABLISHING
PROCEDURES RELATING TO THE ASSUMPTION AND ASSIGNMENT
OF EXECUTORY CONTRACT**

4EverYoung Limited ("4EverYoung") and Stene Marshall (with

4EverYoung, collectively, the "Objectors"), by and through their undersigned

counsel, hereby object (the "Objection") to the Debtor's Motion for Order

(A) Approving Sale Procedures in Connection with Sale of Substantially All of the

Debtor's Assets, (B) Scheduling an Auction and Hearing to Approve the Transaction

and Approving the Form and Manner of Notice thereof, and (C) Establishing

Procedures Relating to the Assumption and Assignment of Executory Contract

(Docket No. 169) (the "Bidding Procedures Motion"). In support of the Objection,

---

[1] The debtor in this chapter 11 bankruptcy case is Derma Pen, LLC, and the last four digits of the Debtor's federal tax identification number are 0866. The location of the Debtor's headquarters and the service address for the Debtor is 3216 So. Highland Drive #200, Salt Lake City, UT 84106.

the Objectors state the following:

## RELEVANT BACKGROUND

1.      On August 8, 2014 (the "Petition Date"), the Debtor filed a voluntary petition (the "Petition") for relief under chapter 11 of the Bankruptcy Code commencing the above-captioned bankruptcy case (the "Bankruptcy Case"). According to the Debtor, the bankruptcy filing was necessitated by the costs associated with two lawsuits that the Debtor initiated, including Derma Pen, LLC v. 4EverYoung Limited, Case No. 2:13-cv-00729 (the "Utah Litigation"). See Declaration of Jeremy Jones at § F (Docket No. 22). The Objectors are the defendants, among others, in the Utah Litigation.

2.      Only three (3) days after the filing of the Bankruptcy Case, the Objectors moved for the entry of an order for stay relief to proceed with the Utah Litigation (Docket No. 8) (the "Stay Relief Motion"). As set forth in the Stay Relief Motion, resolution of the property rights at issue in the Utah Litigation with respect, particularly, to the United States Dermapen trademark (the "Trademark") and the www.dermapen.com domain name (the "Domain Name") was and is critical to any ability of the Debtor to proceed with any reorganization efforts, including its effort to sell all of its assets. See Stay Relief Motion ¶ 8. Notwithstanding the necessity of resolution of the ownership of the Trademark and the Domain Name, the Debtor opposed the Stay Relief Motion and now improperly seeks to sell such property to its insider, Mr. Anderer. A decision with respect to the Stay Relief Motion remains sub judice, and, therefore, neither this Court nor the Utah District Court has made any

determination of the respective rights of the Debtor and 4EverYoung to the Domain Name and the Trademark.

3.      To date the Debtor has filed two monthly operating reports. Specifically, on October 3, 2014, the Debtor filed its monthly operating report for the period from the Petition Date through and including August 31, 2014 (Docket No. 125) (the "August MOR"). Thereafter, on October 23, 2014, the Debtor filed its monthly operating report for the period from September 1, 2014, through and including September 30, 2014 (Docket No. 174) (the "September MOR"). Both the August MOR and the September MOR demonstrate the Debtor's positive cash flow since the Petition Date. Indeed, from the Petition Date, the Debtor's cash on hand has increased from approximately $30,000.00 to in excess of $120,000.00.

4.      On October 20, 2014, the Debtor filed the Bidding Procedures Motion. Contemporaneously therewith, the Debtor filed the Motion for Entry of an Order (A) Approving the Sale of the Debtor's Assets Free and Clear of Liens and Claims and Encumbrances, (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (C) Granting Certain Related Relief (Docket No. 171) (the "Sale Motion"). Although the Debtor delayed filing the Sale Motion (and the Bid Procedures Motion) for weeks in order to document the terms of its purchase agreement with Mr. Anderer, the Debtor has not to date filed any proposed asset purchase agreement (the "APA"), instead relying on a perfunctory and apparently unsigned term sheet with Mr. Anderer.

5.    In conjunction with the Bidding Procedures Motion, the

Debtor requested, and the Court granted, an expedited hearing (Docket No. 173).

The Bidding Procedures Motion is, therefore, scheduled to be heard at the hearing on

November 5, 2014 at 1:00 p.m.  If the Court approves the Bidding Procedures

Motion, which for the reasons set forth herein it should not, the Debtors have

requested that the Court hear the Sale Motion on November 19, 2014 at 1:00 p.m.,

i.e., thirty (30) days from the filing of the Bidding Procedures Motion.  However, the

Debtor has set forth no basis for such an expedited sale.  Nor has the Debtor

identified any marketing efforts that it has undertaken or that it intends to undertake

to ensure that the Debtor's assets are subject to a full and fair process designed to

ensure the maximum value is received for such assets.

6.    The Debtor has not identified such efforts because the Debtor

has made no such efforts.  Indeed, the Debtor's failure to engage in any effort to sell

its purported assets to any entity other than Mr. Anderer further evidences the

impropriety of the sale "process" that the Debtor has proposed.

7.    Prior to the filing of this Objection, the Objectors filed a

motion to dismiss the Bankruptcy Case (Docket No. 179) (the "Motion to Dismiss")

and a motion to appoint an examiner (Docket No. 182) (the "Examiner Motion").

The Objectors continue to conduct discovery with respect to the Motion to Dismiss

and the Examiner Motion.  However, as set forth in the Motion to Dismiss and the

Examiner Motion, the sale process proposed by the Debtor and, indeed, the

Bankruptcy Case itself, represent the latest improper litigation gambits concocted by

4

the Debtor, under the control of Mr. Anderer, to (i) deny 4EverYoung its rights to the

Trademark and the Domain Name and (ii) enable the transfer of such assets to Mr.

Anderer to the detriment of the Objectors and to the Debtor, its estates, and its

creditors.  The Objectors expressly adopt and incorporate by reference as if fully set

forth herein the factual assertions and legal arguments set forth in such motions.

8.      Specifically, through the Bidding Procedures Motion, the

Debtor seeks approval of certain sale procedures (the "Bidding Procedures") in

connection with the sale of substantially all of the Debtor's assets (the "Assets"),

including the Domain Name and the Trademark.[2]  The Bidding Procedures propose

the following schedule:

| | |
|---|---|
| November 5 | Bid Procedures Hearing |
| November 6 | Cure Notices Mailed |
| November 14 | Cure Objections/Sale Objections Due |
| November 17 | Auction |
| November 18 | Assumption Objections Due (Adequate Assurance) |
| November 19 | Sale Hearing |

9.      As set forth below, the Debtor has provided no basis for such

an expedited sale schedule.  The Debtor has made no allegation that such schedule is

mandated by the Debtor's purported secured lender, Mr. Anderer, and no such

timeline is mandated by the terms of the order and agreement governing the Debtor's

use of cash collateral in the Bankruptcy Case.

---

[2]      The Debtor cannot sell such property, because such property does not belong to the Debtor
and/or cannot be sold free and clear of the rights of 4EverYoung, including 4EverYoung's
equitable right to specific performance.  The Objectors specifically reserve all of their rights
to object on this basis, and any other bases, to any attempt by the Debtor to sell the Domain
Name and the Trademark, through the Sale Motion or otherwise.

10.    In the context of requesting this very compressed sale timeline, the Debtor has not mentioned, let alone addressed, the significant disputes that exist concerning the ownership of and right to convey the Trademark and the Domain Name. These issues have to be addressed before any sale of such assets by the Debtor can be approved. However, the Debtor's proposed timeline leaves no time for such determination by this Court or the Utah District Court.[3] Indeed, absent such determination, any purchaser of the Trademark and/or the Domain Name will likely become almost immediately embroiled in litigation with respect to any use of such property. Nor have the Debtor or Mr. Anderer taken any of the customary steps that might make such an expedited sale schedule, in isolation, more palatable, including significant marketing efforts and the filing of critical documents, such as the form of asset purchase agreement against which any interested bidders would be bidding.

11.    Through the Bidding Procedures Motion, the Debtor also requests that the Court approve Mr. Anderer as a qualified bidder, entitled to credit bid $530,000 under Bankruptcy Code section 363(k). However, the Objectors have already raised significant issues with respect to the purported liens and claims of Mr. Anderer and the inequitable actions of Mr. Anderer and the Debtor, which issues remain sub judice. Again, the Debtor makes no mention in the Bidding Procedures Motion of these issues or the fact that the Objectors filed a standing motion to allow

---

[3]    The Objectors do not believe that this Court can make such a determination and have not, and do not, waive any of their rights in this regard.

them to challenge Mr. Anderer's purported liens and claims, which, in the proper

exercise of its fiduciary duties, the Debtor should, but refuses to do.  The Debtor's

proposed timeline is, on its face, insufficient to allow this Court to hear such

standing motion, let alone conduct the trial necessary to determine the validity of Mr.

Anderer's liens and claims when such motion is granted.  See, e.g., In re Radnor

Holdings Corp., 353 B.R. 820, 842 (Bankr. D. Del. 2006) (ordering a trial on the

merits of a complaint filed by the creditors' committee that would include a

determination on the allowance of a large proof of claim filed by the defendants and

stating that the defendants' ability to credit bid would be based on any allowed claim

that survived adjudication of the complaint; and conducting an eight day trial after

engaging in "nearly two months of extensive pre-trial discovery" in order to

adjudicate the complaint).

        12.     Rather than use the Bidding Procedures to ensure a fair and

open auction of its assets, the Debtor asks for this Court's approval of additional bid

protections designed to ensure that the Objectors' rights to the Domain Name and the

Trademark are improperly stripped and that Mr. Anderer continues to receive

improper advantages that will chill bidding.  Among other things, the Debtor asks

that Mr. Anderer be deemed a qualified bidder with a right to credit bid the full

amount of $530,000, the face amount (with a very small adjustment) of Mr.

Anderer's suspect (and in the Objectors' view invalid) secured claims against the

Debtor.  In light of this significant unresolved credit bidding issue and the

unresolved rights of the Debtor and 4EverYoung with respect to the Trademark and

the Domain Name, and for the other reasons set forth herein, the Objectors

respectfully request that the Bidding Procedures Motion be denied.

## OBJECTION

13.    Debtors generally obtain approval of bidding procedures in

order to facilitate an open and fair public sale designed to maximize value for the

estate.  See In re Edwards, 228 B.R. 552, 561 (Bankr. E.D. Pa. 1998); In re E-Z

Serve Convenience Stores, Inc., 289 B.R. 45, 54 (Bankr. M.D.N.C. 2003) (denying

approval of sale on grounds that auction procedures were "unfair and inequitable").

For the reasons set forth below, the Debtor has failed to show that the Bidding

Procedures as proposed will maximize the value of the Debtor's estate for the benefit

of any of its creditors, other than its purported secured lender, former Chairman of its

board, and significant equity holder, Mr. Anderer.  Indeed, the Debtor has drafted

Bidding Procedures that serve only to deprive 4EverYoung of its rights to the

Trademark and the Domain Name and ensure that Mr. Anderer is the only person or

entity that will be willing or able to bid on the Debtor's assets.  For these reasons and

for the reasons set forth more fully herein, the Objectors respectfully request,

therefore, that the Court deny the Bidding Procedures Motion.

**A.    The Court Should Deny The Bidding Procedures Motion And The Debtor's Proposed Sale Timeline Because The Debtor Has Failed To Market The Assets Or Take Necessary Steps To Determine The Ownership Of Such Assets And Mr. Anderer's Ability To Credit Bid For Such Assets.**

14.    Generally, bidding procedures should facilitate and enhance a

competitive bidding process. See In re President Casinos, Inc., 314 B.R. 784, 786

(Bankr. E.D. Mo. 2004) ("Structured bid procedures should provide a vehicle to enhance the bid process and should not be a mechanism to chill prospective bidders' interests."). Indeed, bidding procedures proposed by a debtor should only be approved by a bankruptcy court where the proposed procedures would allow the debtor to conduct an auction in a "controlled, fair, and open fashion" that will maximize the sale price of the assets being sold. See, e.g., In re Dura Automotive Sys., Inc., 2007 Bankr. LEXIS 2764, at *253-51 (Bankr. D. Del. Aug. 15, 2009).

15.    The Debtor has a fiduciary duty to maximize the value of its estate for the benefit of its creditors, and as part of this duty, must appropriately market its assets in order to obtain a fair and adequate purchase price. See In re Marvel Entm't Group, Inc., 140 F.3d 463, 471 (3d Cir. 1998) (acknowledging that a debtor-in-possession is a fiduciary of the creditors and is obligated to refrain from acting in a manner that could harm the estate); In re Bidermann Indus. U.S.A., Inc., 203 B.R. 547, 552 (Bankr. S.D.N.Y. 1997) (stating that the sale process should follow "an intensive effort to drum up the best price obtainable for the creditors" and it cannot be aimed "to cut off other possible sales"); In re Integrated Resource, Inc., 135 B.R. 746, 750 (Bankr. S.D.N.Y. 1992) ("When a debtor desires to sell an asset, its main responsibility, and the primary concern of the bankruptcy court, is the maximization of the value of the asset sold. In general, to receive approval of a proposed sale of assets, the debtor will need to demonstrate to the bankruptcy court that the proffered purchase price is the highest and best offer.") (internal citation omitted).

16.     The Debtor has failed in this instance to undertake any marketing process, let alone a process that would ensure competitive bidding.  Nor does the Debtor make any allegation in the Bidding Procedures Motion or otherwise that any marketing of the Assets that has been completed or will be completed.  The Motion states only that the Debtor will provide notice of the sale of the Assets to "those parties who expressed an interest, or may express an interest, in bidding on the Acquired Assets."  Bidding Procedures Motion ¶ 16.  However, apart from Mr. Anderer and the Objectors, the Debtor has failed to identify a single such interested party.  Additionally, the Debtor makes no mention of a data room or similar mechanism for such interested parties, if such parties exist, to conduct due diligence.  The lack of any marketing process to date by the Debtor assures that there will be no bids for the Assets from any person or entity other than Mr. Anderer.

17.     Further, the Debtor does not adequately define the Assets that it proposes to sell to Mr. Anderer, so that a prospective bidder would be aware of what it was potentially purchasing.  Specifically, the Bidding Procedures Motion provides that the "Acquired Assets" are all or substantially all of the property and assets of the Debtor's business "which will be identified more fully in a soon to be filed APA."  Bidding Procedures Motion ¶ 8.  To date, however, just two (2) days prior to the hearing on the hearing on the Bidding Procedures Motion and only two (2) weeks prior to the proposed date for an auction, the Debtor has not filed the APA that will presumably define the Assets that Mr. Anderer proposes to purchase.

18.     The Bidding Procedures as proposed, without any marketing efforts by the Debtor, assure that no alternative bidders will come forward. The Debtor should be required to conduct a full marketing effort and allow interested parties to complete due diligence prior to any sale of the Assets. Moreover, as the Objectors contend, no sale of the Trademark and the Domain Name can occur until the Debtor's interests in such property, if any, have been established, a determination that cannot be made through a contested matter. Nor should any such sale occur until after the credit bid rights of Mr. Anderer have been decided. Only when the Debtor's interest in all of the Assets and Mr. Anderer's right to bid on such assets have been fixed should any sale process occur. Conducting any sale prior to decisions on such critical issues does unnecessary violence to the property rights of the Objectors, serves only to wrap what is a sham sale in a thin sheen of an ineffective bankruptcy "process," and does nothing to further the laudable goal of maximizing the value of those assets that the Debtor can convey for the benefit of the Debtor's legitimate creditors, including the Objectors.

**B.      There Is No Exigency That Justifies The Expedited Sale Timeline Proposed By The Debtor.**

19.     In the Bidding Procedures Motion, the Debtor argues that it has a need for "prompt sale," but provides no basis for this assertion. Indeed, there appears to be no need for the sale to proceed in the expedited manner proposed by the Debtor. Indeed, the August MOR and the September MOR demonstrate that the Debtor's has performed better than anticipated. Among other things, the Debtor's

11

cash on hand has increased fourfold between the Petition Date and the end of September 2014.  Thus, there is no economic pressure for the Debtor to complete its sale on the unrealistically compressed schedule proposed through the Bidding Procedures Motion.

20.     As set forth above, such an expedited schedule is impossible in light of the Debtor's objection to the Lift Stay Motion and the corresponding delay in any determination of significant issues with respect to the very property that the Debtor proposes to convey.  Nor can any such sale occur until such rights have been determined through a trial.  See, e.g., In re Whitehall Jewelers Holdings, Inc., No. 08-11261, 2008 WL 2951974, at *4 (Bankr. D. Del. July 28, 2008) ("A bankruptcy court may not allow the sale of property as 'property of the estate' without first determining whether the property is property of the estate.") (emphasis added).

21.     Similarly, Mr. Anderer cannot credit bid, as the Debtor has improperly proposed, until the purported claims and liens of Mr. Anderer, which claims and liens the Objectors are prepared to litigate as promptly as possible, have been fixed.  See In re Fisker Automotive Holdings, Inc., 510 B.R. 55, 61 (Bankr. D. Del. 2014) ("The law leaves no doubt that the holder of a lien the validity of which has not been determined, as here, may not bid its lien.")  (citing In re Daufuskie Island Props., LLC, 441 B.R. 60, 63 (Bankr. D.S.C. 2010) (refusing to allow a credit bid where a mortgage was in dispute); see also Nat'l Bank of Commerce v. McMullan (In re McMullan), 196 B.R. 818, 835 (Bankr. W.D. Ark. 1996) (no credit bidding where the validity of liens and security interests remained unresolved).  But

see In re Octagon Roofing, 123 B.R. 583, 592 (Bankr. N.D. Ill. 1991) (allowing a credit bid where an irrevocable letter of credit was posted in case the lien was later avoided through a pending adversary proceeding).

22.     The Debtor offers no response to this reality in the Bidding Procedures Motion or otherwise.  Indeed, the Debtor continues to ignore the need to make these determinations, as the Debtor has done from the start of the Bankruptcy Case.  Instead, the Debtor apparently would have this Court improperly strip the Objectors of their property rights in violation of the applicable Bankruptcy Rules and the Federal Rules.  Moreover, the Debtor would apparently have this Court enter an order that would improperly vest Mr. Anderer, an insider of the Debtor who has repeatedly violated his duties to the Debtor, including by attempting directly or indirectly to abscond with property and business opportunities that belong to the Debtor and its creditors (or to 4EverYoung, in the case of the Trademark and Domain Name), with rights to property that the Debtor cannot convey.  This the Court should not do.

23.     Without setting forth any factual bases for the purported need for its expedited sale schedule, the Debtor seeks to have an auction of the Assets on November 17, 2014.  Further, the Debtor requests that the Sale Motion be heard just fourteen (14) days after the Bidding Procedures are approved.  The proposed sale of substantially all of the Debtor's assets will be commenced and closed in thirty (30) days.  However, the Bidding Procedures Motion only provides that the prompt sale is needed because the Debtor "filed the Petition with the expressed intention of selling

the Assets, namely the trademark and the URL address, for the highest price to pay creditors' claims of the Debtor... to maximize value of the creditors and other parties in interest and the bankruptcy estate." Bidding Procedures Motion ¶ 6. This explanation does not justify the schedule proposed by the Debtor, which schedule not only impinges on, but effectively destroys the due process rights of the Objectors with respect to a determination of the rights of 4EverYoung to the Trademark and the Domain Name.

24.     In short, the proposed expedited sale process (i) is not justified, (ii) violates due process, and (iii) is not designed to maximize value to the Debtor's estate.  Therefore, the Bid Procedures should not be approved and instead the Bidding Procedures Motion should be denied.

C.     **The Debtor Has Failed To Comply With The Local Rules.**

25.     The Debtor has failed to comply with Rule 6004-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules").  Local Rule 6004-1 sets forth certain requirements with respect to the filing of sale motions and sale procedures motions.

26.     As an initial matter, Local Rule 6004-1 requires that a "copy of the proposed purchase agreement, or form of such agreement substantially similar to that one the debtor reasonably believes it will execute in connection with the proposed sale" must be filed with the sale motion.  As set forth above, no APA has been filed to date.  The failure to file the APA makes it impossible for any interested

parties to analyze the assets that the Debtor seeks to sell to Mr. Anderer and the terms of such proposed sale.

27.    Further, the Debtor has failed to highlight certain provisions as required by Local Rule 6004-1(b)(iv). Most significantly, the Bidding Procedures and Sale Motion fail to highlight "any measure taken to ensure the fairness of the sale process and the proposed transaction" as required by Local Rule 6004-1(b)(iv)(A). Here, the Debtor proposes a stalking horse bidder who is an equity holder, former chairman, and secured lender of the Debtor. See Bidding Procedures Motion at p. 7. Due to the insider nature of the Debtor's stalking horse bidder, the entire sale process should be subject to closer scrutiny. See Crown Vill. Farm, LLC v. ARL, L.L.C. (In re Crown Vill. Farm, LLC), 415 B.R. 86, 93 (Bankr. D. Del. 2009) (acknowledging that where the stalking horse is an insider the sale process is subject to close scrutiny); see also In re Pilgrim's Pride Corp., 401 B.R. 229, 237 (Bankr. N.D. Tex. 2009) ("[W]hen a transaction is proposed between the debtor and its insiders, the court cannot simply rely on the debtor's business judgment to ensure creditors and the debtor's estate are being properly cared for."). Although discovery with respect to the proposed sale and the abbreviated sale process remains ongoing, the sale to Mr. Anderer proposed by the Debtor cannot survive any significant scrutiny, ley alone the heightened level of scrutiny that this insider sale warrants.

28.    Additionally, the Debtor failed to identify certain aspects of the stalking horse agreement as required by Local Rule 6004-1(c)(i)(C), including, but not limited to, whether the agreement contained no-solicitation provisions. The

Debtor further violated Local Rule 6004-1 by stating that only Qualified Bidders and specifically enumerated parties in interest could attend the auction. <u>See</u> Bidding Procedures Motion at p. 8. Local Rule 6004-1(c)(ii)(C) states that the auction shall be "conducted openly and all creditors will be permitted to attend."

29.    For these reasons as well, the Bidding Procedures Motion should be denied.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Objectors respectfully

request that the Court (i) deny the relief requested in the Motion and (ii) grant the

Objectors such other and further relief as this Court deems just and proper.

Dated:  Wilmington, Delaware
        November 3, 2014

/s/ Mark L. Desgrosseilliers
Mark L. Desgrosseilliers (Del. Bar No. 4083)
Ericka F. Johnson (Del. Bar No. 5024)
Morgan L. Patterson (Del. Bar No. 5388)
Womble Carlyle Sandridge & Rice, LLP
222 Delaware Avenue, Ste. 1501
Wilmington, DE  19801
Telephone:  (302) 252-4320
Facsimile:  (302) 661-7738
E-mail: mdesgrosseilliers@wcsr.com
E-mail: erjohnson@wcsr.com
E-mail: mpatterson@wcsr.com

-and-

Christine T. Greenwood
Christopher M. Von Maack
Magleby & Greenwood, P.C.
170 South Main Street, Suite 850
Salt Lake City, Utah 84101-3605
Telephone: 801-359-9000
Facsimile: 801-359-9011
E-mail: greenwood@mgpclaw.com
E-mail: vonmaack@mgpclaw.com

Counsel for 4EverYoung Limited and Stene Marshall

33149312v8